## BOATMAN'S BANK v. ROGERS et al.

No. 24577.    May 12, 1936.

Charles Claflin Allen, Jr., and W. L. Curtis, for plaintiff in error.

W. M. Gulager, Roy M. Frye, and A. M. deGraffenreid, for defendants in error.

OSBORN, V. C. J. This action was instituted in the district court of Sequoyah county by Boatman's Bank of St. Louis, Mo., hereinafter referred to as plaintiff, against William Rogers, John Morris, J. R. Smith, and D. P. Delaney, hereinafter referred to as defendants, as an action on a promissory note and for foreclosure of a chattel mortgage. Petitions in intervention were filed by Mrs. W. F. Norman and by Clifford Johnson and C. J. Sawyer, hereinafter referred to as interveners, in which they claimed to be the owners of certain cattle described in the chattel mortgage. No appearance was made by defendants, and the

issues between plaintiff and the interveners were submitted to a jury. The verdict of the jury was in favor of the interveners. From a judgment thereon, plaintiff appeals.

The record shows that the defendants were the agents and managing officers of the Night Hawk Keetoowah Society of Indians, an unincorporated society of Cherokee Indians engaged in banking, farming, and stock raising.

On November 12, 1919, the defendants Rogers, Morris, and Smith, as agents of the society, executed and delivered to D. P. Delaney. a chattel mortgage upon 239 head of cattle in their possession as security for a promissory note of $8,500. This mortgage and note were subsequently assigned to plaintiff. On March 6, 1922, the same defendants executed to Delaney their note for $9,-000 as a renewal note for the former indebtedness, and executed a chattel mortgage to secure said indebtedness on 532 head of cattle in their possession together with the increase thereof. This note and mortgage were likewise assigned to plaintiff.

On July 7, 1923, plaintiff instituted this action to foreclose the latter mortgage. A bond was filed and a writ of replevin issued and delivered to the sheriff, who took possession of 207 head of cattle, held them for 24 hours and delivered them to plaintiff. They were thereafter sold by plaintiff.

On July 31, 1924, an amended petition in intervention was filed by Mrs. W. F. Norman in which it was alleged that on or about June 29, 1918, Clifford Johnson, acting by and through his agent, turned over, under a contract for use to the defendants Rogers, Morris and Smith, 55 head of Aberdeen Angus cows and three bulls; that by the terms of the said contract said defendants were to care for the cows and bulls, and for pasturage and care were to receive one-half of the increase of said cattle; that said contract was to terminate at the end of five years from the date of the making thereof; that title to the original 58 head of cattle and one-half of the increase thereof should always remain in the said Clifford Johnson; that on or about May 19, 1921, Clifford Johnson and his wife sold and conveyed to the intervener a two-thirds interest in and to the original 58 head and a two-thirds interest in and to the one-half of the increase of said cattle, and that plaintiffs attempted to replevy said cattle and illegally sold the same to parties unknown to the intervener; that the value of said cattle purchased by the intervener from the said Johnson was the sum of $4,200. Intervener sought judgment against the plaintiff for the return of the cattle or their value.

On August 10, 1924, an amended petition in intervention was filed by Clifford Johnson and C. J. Sawyer alleging the same contractual agreement hereinabove referred to. Interveners further alleged the transfer of a two-thirds interest in the cattle to Mrs. Norman and alleged a transfer and conveyance of the remaining one-third interest in said cattle to C. J. Sawyer, as trustee for Clifford Johnson. It was further alleged that the plaintiff had seized the original 58 head of cattle and 149 head as the increase thereof and had sold the same. The interveners prayed for a return of the cattle or judgment against the plaintiff in the sum of $2,700, the value of their alleged interest therein.

On September 19, 1929, a default judgment was entered in favor of interveners; a motion to vacate said judgment was filed; the judgment was vacated and the cause was tried to a jury. A verdict was rendered in favor of Mrs. Norman in the sum of $1,500, and in favor of C. J. Sawyer in the sum of $1,000.

It is urged that the trial court erred in overruling plaintiff's motion to strike the petitions in intervention, for the reason that said petitions were not filed until plaintiff had taken possession of the cattle and sold them under the power of sale contained in the mortgage; that said interveners are attempting to prosecute an action in conversion against plaintiff in this action and that such action can be maintained only as a separate, independent action. Section 158, O. S. 1931, provides:

"When, in an action for the recovery of real or personal property, any person having an interest in the property applies to be made a party, the court may order it to be done."

It is true that the property had been sold by the plaintiff prior to the filing of the petitions in intervention, but, so far as the record discloses, there had been no final judgment entered in the case and it was still pending. There is, therefore, no merit in plaintiff's contention, and the trial court did not err in permitting the filing of the petitions in intervention, and proceeding to determine the issues raised by said petitions.

Other assignments of error are that the verdict of the jury is contrary to the law and evidence; that the court erred in the admission of certain evidence; that the court erred in giving certain instructions to the

jury. These assignments will be considered together. In this connection it will be necessary to notice the issues raised by the pleadings. We quote from the amended intervening petition of Clifford Johnson and C. J. Sawyer, as follows:

"Interveners further show to the court that for a good and valuable consideration, the defendants therein did on the __ day of _____, mortgage to the plaintiff all of the said cattle including the interests of these interveners, and that on the __ day of _____, 1924, purporting to act under authority of law and under the mortgage which was void and of no effect as against these interveners, plaintiff herein, Boatman's Bank, did attempt to replevy and did illegally sell to parties unknown to these interveners 207 head of cattle, including the original 58 head and 149 increase thereof, one-third interest in 58 head thereof belonging to these interveners and one-third of one-half interest in 149 head thereof belonging to these interveners. * * *"

In the application of the intervener Johnson for permission to file his petition in intervention, it is alleged:

"The plaintiff states unto the court that he is the owner of a portion of the property upon which the mortgage is sought to be foreclosed in this case; that he denies that the mortgagors had a right to execute a mortgage, upon at least a portion of the property conveyed therein and that he desires that his right and title to the property be adjudicated in the cause."

The allegations of the petition in intervention of Mrs. Norman were substantially the same as the allegations of the petitioner Johnson. She alleged, in part, as follows:

"Intervener shows that on or about the __ day of _____, 1924, purporting to act under authority of law and under a mortgage which was void and of no effect as against this intervener the Boatman's Bank, the plaintiff herein, did attempt to replevy and did illegally sell to parties unknown to this intervener 207 head of cattle."

Plaintiff filed an answer to the petitions in intervention. Therein it was alleged as follows:

"Further answering, plaintiff states that if said interveners ever at any time acquired any interest in the property described in plaintiff's petition, or in their intervention, that said interest was acquired without notice to the plaintiff, and without actual delivery of said cattle by the defendants in this case to said interveners, or either of them, and without any change of possession or the transfer of the location of said cattle, and that by reason thereof said interveners did

not acquire any interest in said cattle which is superior to the interest of this plaintiff, since as to this plaintiff said purported purchase was fraudulent and void."

The defense of plaintiff to the claims of interveners is predicated wholly upon the provisions of section 10008, O. S. 1931, which is as follows:

"Every transfer of personal property other than a thing in action, and every lien thereon, other than a mortgage, when allowed by law, is conclusively presumed, if made by a person having at the time the possession or control of the property, and not accompanied by an immediate delivery, and followed by an actual and continued change of possession of the things transferred, to be fraudulent and therefore void, against those who are his creditors while he remains in possession, and the successors in interest of such creditors, and against any person on whom his estate devolves in trust for the benefit of others than himself, and against purchasers or incumbrancers in good faith subsequent to the transfer."

It is noted that there are positive allegations in the petitions of intervention that the mortgage in question covered the cattle which interveners claimed to own. It is not alleged that the cattle claimed by interveners were not included in said mortgage.

Notwithstanding the issues so framed by the pleadings, the trial court, over the objection of plaintiff, permitted two of the defendants to testify that they had no intention, at the time of the execution of the mortgage relied upon by plaintiff, of including in said mortgage any property belonging to Clifford Johnson and did not mortgage said cattle. It is argued in the brief of interveners that the evidence is conclusive that the cattle of Johnson were not included in the mortgage to plaintiff.

The court gave to the jury the following instructions:

"On behalf of the plaintiff it is contended that under and by virtue of default being made in the terms of certain notes and mortgages which were made and executed by duly authorized officers of the Kee-too-wah Society that this action was instituted and as an incident thereof possession was obtained of only such cattle as were included in their mortgage. That none of the cattle so obtained were ever owned by Clifford Johnson or the interveners, Mrs. W. F. Norman and C. J. Sawyer, trustee."

"It is further contended for and on behalf of the plaintiff that it never at any time obtained possession of nor sold any cattle owned by said Clifford Johnson or the

interveners, Mrs. W. F. Norman and C. J. Sawyer, trustee."

"It is also contended on behalf of the interveners that none of the cattle in which they claim an interest were included in the mortgage held by the bank."

Plaintiff excepted to each of the above instructions.

The record discloses that instructions were also given relating to the necessity of showing a change of possession between vendor and vendee to constitute a valid transfer as against a subsequent incumbrancer without notice of such transfer. Interveners insist that the error in giving the above instructions was cured by the giving of the following instruction:

"You are, therefore, instructed that if you find from the evidence, by a preponderance thereof, that 58 head of cattle and the increase thereof referred to, were taken possession of by the plaintiff and at said time said cattle were not included in the mortgage of the plaintiff, but were owned by the interveners, Mrs. W. F. Norman and C. J. Sawyer, trustee, and that at said time said cattle were in their possession and not in the possession of the Kee-too-wah Society or their agents, Smith, Rogers or Morris, then your verdict should be in favor of the interveners for the return of the cattle and the reasonable market value thereof. * * *"

It is insisted by interveners that under this instruction the jury might find either that the cattle were not included in the mortgage or, if they were included in the mortgage, they were in possession of defendants at the time the mortgage was executed.

In this connection there is no evidence in the record from which it might be inferred that interveners were ever in possession of the cattle from the date of the execution of the original contract until the cattle were seized by the sheriff. The contract upon which interveners rely to establish their title to the cattle specifically provides that the cattle were to remain in the possession of defendants for a period of five years from June 29, 1918, the date of the execution of the contract. Intervener Johnson testified:

"Q. You say you saw these cattle in Sequoyah county in April '23? A. Yes, sir. Q. Where did you see them? A. Near Gore. Part in Adair county and Sequoyah county. Q. At whose place did you see them? A. Well, I don't know what the place was— out on the range. Q. Did you see all of them? A. Part of them? Q. Who was looking after them? A. The Kee-too-wah Society. Q. The Kee-too-wah Society had them? A: Yes, sir.

Q. Now, the Kee-too-wah Society was keeping them for John R. Smith, John Marrs (Morris) and William Rogers—had charge of these cattle and possession of them and looking after them all the time? A. Yes, sir, the contract called for that. Q. And they had charge of them in April, 1923? A. Yes, sir."

It is observed that the latter mortgage was executed on March 6, 1922, and the original mortgage was executed on November 12, 1919.

The only testimony offered by interveners regarding possession of the cattle claimed by them was to the effect that they made occasional trips to inspect the cattle and to give directions relating to their care and feeding. No actual or continued change of possession from the defendants to the interveners was shown. The verdict of the jury, therefore, was based upon a finding that the cattle claimed by interveners were not included in the mortgages to plaintiff, which finding is beyond and outside of the issues raised by the pleadings. There is no rule of procedure more firmly settled than that it is error to instruct the jury on a material issue not raised by the pleadings. Dill v. Johnston, 121 Okla. 62, 247 P. 349; C., R. I. & P. Ry. Co. v. Mailes, 52 Okla. 278, 152 P. 1131; Chambers v. Van Wagner, 32 Okla. 774, 123 P. 1117.

Interveners were bound by the allegations of their pleadings. Since the verdict of the jury may be supported only upon an issue improperly submitted to it, the judgment on the verdict cannot stand.

Other contentions of the parties have been considered and are without substantial merit.

The judgment is reversed and the cause remanded, with directions to grant a new trial.

BUSBY, PHELPS, CORN, and GIBSON, JJ., concur.